UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NPF-WL, INC., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 00-BU-0436-E |
| SOUTHERN OF ANNISTON, INC.; et al., | ) ) ) ) | |
| Defendants. | ) | |

**ENTERED**
AUG 3 1 2001

## MEMORANDUM OPINION

This case is presently pending before the Court on motions for summary judgment filed by Plaintiff NPF-WL, Inc. (Doc. 37) and Defendants Prime Health Services, L.L.C., Prime Healthcare Services, Inc., and Prime Living, Inc. [referred to collectively as the "Prime Defendants" or "Defendants"](Doc. 34)  Defendants have also filed a motion to sever claims (Doc. 34) and a motion to strike, which is contained in their brief in opposition to Plaintiff's motion for summary judgment. (Doc. 47, p. 5). Based on the Court's review of the record and for the reasons set forth below, Defendants' motion to strike is due to be granted; Defendants' motion to sever is due to be denied; Defendants' motion for summary judgment is due to be granted in part and denied in part; and Plaintiff's motion for summary judgment is due to be denied.

## I.  STATEMENT OF FACTS

On or about November 13, 1997, Cambridge Health Care of Starke, Inc. [Cambridge], doing business as Whispering Pines Care Center, and Plaintiff entered into a Sale and Subservicing Agreement. The agreement was amended on or about May 30, 1998. Whispering Pines Care Center was a nursing home located in Starke, Florida.

On or about November 13, 1997, Southern of Anniston, Inc. [Southern], doing business as Beckwood Manor, and Plaintiff entered into a Sale and Subservicing Agreement. The agreement was amended on or about May 30, 1998. Beckwood Manor was a nursing home located in Anniston, Alabama.

Pursuant to these agreements, Plaintiff purchased substantially all of the accounts receivable generated by Cambridge and Southern between November 13, 1997, to December 1, 1998. Plaintiff filed financing statements perfecting its security interest in the accounts receivable of Cambridge and Southern.

On or about December 1, 1998, Anniston Nursing Center, L.L.C ["ANC"] purchased certain of the assets of Southern, excluding the receivables, and succeeded to the operation of Beckwood Manor. Also on December 1, 1998. Starke Nursing Center, LLC ["SNC"] purchased certain of the assets of Cambridge, excluding the receivables, and succeeded to the operation of Whispering Pines. Pursuant to the agreements between Southern and ANC, and Cambridge and SNC, Southern and Cambridge remained liable for all operating expenses incurred prior

to the closing date of December 1, 1998. Southern and Cambridge also indemnified ANC and SNC for such expenses. After the closing date, ANC and SNC paid debts of Southern and Cambridge for necessary operating expenses – such as payroll, utilities, and food – incurred prior to the closing date.

Defendant Prime Health Services ["PHS"] assumed the management of these two nursing homes for ANC and SNC in December of 1998 for a fee of 7% of revenues. The evidence is not disputed that, because of poor performance, PHS did not receive a fee for services provided to ANC and/or SNC.

ANC and/or SNC received Southern and Cambridge receivables in the form of checks and electronic funds transfers. The funds were deposited in the accounts of ANC and/or SNC; no funds were deposited into PHS accounts.

In performance of its management responsibilities, PHS provided an accounting or reconciliation of ANC's and SNC's use of Southern and Cambridge receivables to pay pre-closing expenses of Southern and Cambridge. PHS neither received nor retained any proceeds of the accounts of Southern and Cambridge.

Robert Hagan was and is the managing member of ANC and SNC; he is also the president of PHS. PHS admits it collected Southern and Cambridge accounts receivable. Employees of ANC and SNC deposited these receivables into the bank accounts of ANC and SNC. PHS denies that it had any knowledge of the agreement between Plaintiff and Southern and Cambridge regarding the receivables

According to Hagan's deposition testimony, typically collected receivables are reconciled vis-a-vis the current owner and the prior owner, and receivables belonging to the prior owner are either delivered directly to the prior owner as collected, or reconciled and paid to the prior owner on a periodic basis. Hagan, after speaking with representatives of Southern and Cambridge, determined that ANC and SNC would exercise offset against the receivables proceeds for amounts paid on behalf of Southern and/or Cambridge for operating expenses. PHS contends that after ANC and SNC had returned the excess receivables to Southern and Cambridge, Plaintiff contacted PHS and asked about the collection and disbursement of the receivables. PHS contends this was the first time that PHS received any notification of Plaintiff's claim to Southern and Cambridge's receivables.

Beckwood and Whispering Pines were not profitable. SNC surrendered Whispering Pines to the lessor and ANC sold Beckwood to the lessor for a promise to return the purchase price.

On or about February 23, 2000, Plaintiff filed its Complaint against Southern, Cambridge, and the Prime Defendants. It did not name ANC or SNC as Defendants. On July 21, 2000, Plaintiff obtained an default judgment against Southern in the amount of $313,785.00, and against Cambridge in the amount of $613,450.00. Defendants contend, however, that such judgments are void because Southern filed a Chapter 7 bankruptcy petition.

## II.    MOTION TO STRIKE

Defendants contend that paragraphs 4 and 5 of Beth Stephens's[1] affidavit and paragraph 10 and exhibit 5 of Christopher Long's[2] affidavit are due to stricken on the ground that they are inadmissible hearsay.  As discussed below, Plaintiff contends that "Prime Health Services [PHS] exercised control over the receivables and the proceeds of the receivables and directed [ANC and SNC] to retain the proceeds rather than pay them to [Plaintiff.] Doc. 46, p. 23. Plaintiff contends that Defendant PHS "instructed Southern, Cambridge, [ANC], [SNC], and employees of PHS to deposit all payments of accounts receivable to the bank accounts of [PHS, ANC, and/or SNC]". Doc. 38, p. 9.  To support this assertion, Plaintiff cites the Court to paragraph 10 of the affidavit of Christopher Long and  paragraphs 4 and 5 of the affidavit of Beth Stephens. *Id.* at p. 9 n.17.

Paragraph 10 of Long's deposition states:

> NPF has been informed that subsequent to December 1, 1998, the [Prime Defendants] instructed Southern and Cambridge [sic] to deposit all payments of accounts receivable to the bank accounts of the [Prime Defendants.]  Attached hereto as Exhibit 5 is a copy of the memorandum received by NPF from Beth Stephens of Southern Health Management, Inc., and maintained by NPF in the regular course of business, and it is NPF's regular practice to maintain similar documents in the ordinary course of business.

---

[1] Ms. Stephens is a former employee of Southern Health Management, Inc., which operated Beckwood and Whispering Pines on behalf of Southern and Cambridge.

[2] Mr. Long is the client transition specialist for National Century Financial Enterprises, an affiliate of Plaintiff.

Doc. 40, ¶ 10. In its motion for summary judgment and its opposition to the Prime Defendants' motion for summary judgment, Plaintiff does not allege that Defendant PHS ever instructed **Southern** or **Cambridge** to deposit anything anywhere, as subsequent to December 1, 1998, Southern and Cambridge had sold out to ANC and SNC. Assuming that Long's affidavit may be deemed to support the proposition that Defendant PHS instructed ANC and/or SNC to deposit the receivables in the accounts of ANC and/or SNC, the Court finds that the affidavit testimony is inadmissible as it is not based on personal knowledge and the document re-ed upon by Long in reaching his conclusions – the memorandum of Beth Stephens – is inadmissible hearsay within hearsay and is not within the business records exception.

On or about April 26, 1999, almost six months after the transfer of assets from Southern and Cambridge to ANC and SNC, Stephens sent a memorandum to Long setting forth the following, in pertinent part:

> Joni Hall and I both spoke with the [SNC] Administrator, Linda Tatum, . . . and she told us that her instruction from her current employer, Prime Living,[3] is to deposit all funds received at the facility to their bank accounts[4] even if it belongs to the previous owner. We both stressed the importance of forwarding this check to the Lockbox, but she says her hands are tied.
>
> . . .

---

[3]Tatum was employed by SNC, not Prime Living; PHS, and not Prime Living, was managing the SNC facility.

[4]The funds were deposited into the account of SNC.

> . . . When we contacted the bookkeeper at the [ANC] facility, she did not want to answer questions about the check, just referred us to the Corporate Officer for Prime Living Services. Mr. Hill contacted Medicaid and we were able to obtain a copy of the canceled check where it was deposited to the new owner's bank account on December 10, 1998.[5]

Doc. 40, Exh. 5. Stephens prepared this memorandum in response to another memorandum from Long, which has not been provided the Court. Stephens's affidavit (Doc. 39), signed August 3, 2001, repeats essentially the same events as set forth above.

Paragraph 10 of the Long affidavit, in addition to being incredibly inaccurate, is not based on personal knowledge. His assertions of fact are based on hearsay statements, contained in the Stephens memorandum, as to what employees of ANC and SNC told Stephens regarding their instructions from Defendant PHS or some other Prime Defendant not involved with the operation of facilities at issue. Therefore, paragraph 10 of the Long affidavit is due to be stricken pursuant to Fed. R. Civ. P. 56(e). Also, paragraphs 4 and 5 of Stephens's affidavit, to the extent they are offered to prove that Defendant PHS instructed ANC and SNC regarding what to do with the receivables, are also due to be stricken as not based on personal knowledge and as inadmissible hearsay. Fed. R. Civ. P. 56(e); Fed. R. Evid. 801.

---

[5] The check was deposited into the account of ANC.

The Stephens memorandum is also due to be stricken to the extent it is offered to support the fact that PHS instructed ANC and SNC to deposit all receivables into the accounts of PHS, ANC, and/or SNC. Plaintiff asserts that the memorandum is admissible pursuant to Fed. R. Evid. 801(c), 803(6), and 807. The Court, however, finds that the memorandum does not satisfy any of these exceptions and, therefore, is due to stricken.

Plaintiff contends that the memorandum is admissible because it is not offered to prove the truth of the matters asserted therein; rather, it "may be" offered to prove that PHS had knowledge of Plaintiff's interest in the receivables. However, in its motion for summary judgment and its opposition to Defendants' motion for summary judgment, Plaintiff offers the memorandum as evidence that PHS instructed ANC and SNC employees to deposit the money in ANC and SNC accounts; thus Plaintiff has offered the evidence for the truth of the matter asserted therein.

Plaintiff asserts that the Stephens memorandum is admissible as an exception to the hearsay rule for business records. Doc. 48, p.5 (citing Fed. R. Evid. 803(6)). Rule 803(6) provides an exception from the general prohibition on hearsay when the proffered statement is :

> A memorandum . . . of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, *a person with knowledge*, if kept in the course of a regularly conducted business activity, and if it was *the regular practice of that business activity to make the memorandum* . . ., all as shown by the testimony for the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting

> certification, unless the source of the information or method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6)(emphasis added). Plaintiff offers the memorandum as a business record; however, Stephens did not create the memorandum while acting in the course of regularly conducted business of Plaintiff. Moreover, the document was not created at or near the time some of the events recounted therein occurred. Therefore, the Court finds that the memorandum does not qualify as a business record of regularly conducted activity, pursuant to Fed. R. Evid. 803(6).

Finally Plaintiff argues that the memorandum is subject to the residual exception to the hearsay rule, Fed. R. Evid. 807. However, the Court finds that the memorandum does not possess sufficient circumstantial guarantees of trustworthiness to allow its consideration. Therefore, the Court finds that the memorandum is not admissible under Fed. R. Evid.807.

Based on the foregoing, the Court finds that Defendants' motion to strike is due to be granted. Paragraph 10 and exhibit 5 of Long's affidavit and paragraphs 4 and 5 of Stephens's affidavit are due to be stricken and have not been considered by the Court in deciding the motions for summary judgment.

## III.   MOTION TO SEVER

The Prime Defendants ask the Court to sever the claims against them from those against Defendants Southern and Cambridge. Default judgments have been entered against Southern and Cambridge and in favor of Plaintiff. Therefore, the

Court finds that there is no just reason for delay and, in a separate order, the Court will direct that a final judgment be entered. Fed. R. Civ. P. 54(b).

The Court notes that the Prime Defendants contend that Defendant Southern has filed for bankruptcy. Doc. 34, ¶ 6. The Court will allow Plaintiff to show cause why the claims should not be dismissed without prejudice against Southern prior to the entry of a final judgment in its favor on the default judgment against Southern.

The Prime Defendants' motion to sever is due to be denied. However, the Court anticipates dismissal of the claims against Southern and/or a final judgment based on the default judgments against Southern and Cambridge prior to the trial of this action.

## IV.   SUMMARY JUDGMENT MOTIONS

### A.   SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)  A party

seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

### B. DISCUSSION

#### 1. Claims against Prime Living, Inc. and Prime Healthcare Services L.L.C.

Defendants contend that neither Prime Living, Inc., nor Prime Healthcare Services, L.L.C. are in any way involved in the incidents that form the basis of Plaintiff's claims. Thus, Defendants ask the Court to dismiss all claims against Prime Living and Prime Healthcare Services. Plaintiff does not oppose this motion.

Therefore, Defendants' motion for summary judgment as to all claims against Defendants Prime Living and Prime Healthcare Services is due to be granted.

### 2. Fraudulent Concealment

Defendant PHS contends that it is entitled to judgment as a matter of law on Plaintiff's fraudulent concealment claim because there is no evidence that Plaintiff detrimentally relied on any statement or non-disclosure by Defendant PHS. See Doc. 35, p. 14. Reliance is required in order to maintain a cause of action for fraudulent concealment or suppression. Ala. Code § 6-5-102; *Snerrin v. Northwestern Nat. Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993)(citing *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524 (11th Cir.1993) (citing *Hardy v. Blue Cross and Blue Shield of Ala.*, 585 So.2d 29, 32 (Ala.1991))); *Jones v. Newton*, 454 So.2d 1345, 1349 (Ala. 1984); *see also Soler v. Secondary Holdings, Inc.*, 771 So.2d 62, 69 (Fla. App. 2000)(citing *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985); *Tourismart of America, Inc. v. Gonzalez*, 498 So.2d 469, 471 (Fla. App. 1986)); *Kelley v. Ford Motor Credit Co.*, 137 Ohio App.3d 12, 16, 738 N.E.2d 9, 11 (( 2000)(citing *Rose v. Zaring Homes, Inc.*, 122 Ohio App.3d 739, 743-44, 702 N.E.2d 952, 955 (1997)).

Plaintiff, in response, argues only that it was damaged by Defendant PHS's failure to disclose. Doc. 46, p. 21. It does not argue or present evidence of its "reliance" on this failure to disclose. *See id.* at 20-21.

Therefore, the Court finds Defendants' motion for summary judgment is due to be granted. There are no disputed issues of fact and Defendant PHS is entitled to judgment as a matter of law as to Plaintiff's fraudulent concealment claim.

### 3. Unjust Enrichment

Defendants contend that they are entitled to judgment as a matter of law on Plaintiff's unjust enrichment claim because Plaintiff cannot show that Defendant PHS received any benefit from the allegedly converted receivables. Plaintiff contends that the Defendant PHS received a benefit by virtue of its control over the receivables "in that it generated management work for itself with respect to Beckwood Manor and Whispering Pines, and ... accumulated management fees of 7% of gross revenues collected." It argues that this "benefit" entitles it to damages in the amount of the receivables collected and retained. Doc. 46, p. 23. The Court disagrees.

The Alabama Supreme Court has held that "[t]he essence of the theories of unjust enrichment . . . is that a plaintiff can prove facts showing that [a] defendant *holds* money which, in equity and good conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud." *Mitchell v. H & R Block, Inc.*, 783 So.2d 812, 817 (Ala. 2000)(quoting *Hancock Hazlett Gen. Constr. Co.*, 499 So.2d 1385 (Ala.1986) (citing *Foshee v. General Tel. Co.*, 295 Ala. 70, 322 So.2d 715 (1975); *Wash v. Hunt*, 281 Ala. 368, 202 So.2d 730 (1967)))(emphasis added).

There is no evidence that Defendant PHS ever "held" any receivable pledged to Plaintiff. The receivables were deposited into accounts for ANC or SNC and, after recouping payments made on behalf of Southern and/or Cambridge, the remainder of the receivables were sent to Southern and/or Cambridge on checks drawn on these accounts. Plaintiff has failed to present any evidence that Defendant PHS ever "held" the receivables at issue in this case.

Also, there is no evidence that Defendant PHS received or retained any "benefit" from the receivables. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 303 ("To state a cause of action for unjust enrichment, a plaintiff must allege facts that, if taken as true, would show . . . that a benefit was conferred upon the defendant . . . ." citing *Turner v. Fitzsimmons*, 673 So.2d 532, 536 (Fla. 1st DCA 1996); *Gomes v. Stevens*, 548 So.2d 1163 (Fla. 2d DCA 1989)); *St. Paul Mercury Ins. v. Meeks*, 270 Ga. 136, 137(1), 508 S.E.2d 646 (1998 ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." (citation omitted)); *Daup v. Tower Cellular, Inc.*, 136 Ohio App.3d 555, 569, 737 N.E.2d 128, 138 (2000)("In general, '[u]njust enrichment occurs when a party retains money or benefits that in justice and equity belong to another.' " (quoting *Holzman v. Fifth Third Bank, N.A.*, Hamilton App. No. C-980546, unreported, 1999 WL 252715 (Apr. 30, 1999)). Defendant PHS was not

paid the agreed 7% fee and it did not receive any benefit of the recouped expenses paid by ANC and SNC.

Therefore, Defendants' motion for summary judgment is due to granted as to Plaintiff's unjust enrichment claim. There are no disputed issues of material fact and Defendants are entitled to judgment as a matter of law.

### 4. Conversion

Based on its review of the record, the Court finds that there are disputed issues of fact and that neither party is entitled to judgment as a matter of law on Plaintiff's conversion claim.

"Conversion is a wrongful taking, detention, or interference, or an illegal use or misuse of another's property. The gist of the action is the wrongful exercise of dominion over property to the exclusion of or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." *Willingham v. United Ins. Co. of America*, 628 So.2d 328, 333 (Ala. 1993)(quoting *Greene County Board of Education v. Bailey*, 586 So.2d 893, 898 (Ala.1991)(citing *Ex parte SouthTrust Bank of Alabama, N.A.*, 523 So.2d 407 (Ala.1988)))(internal quotations omitted); *see also United American Bank of Cent. Florida, Inc. v. Seligman*, 599 So.2d 1014, 1017 (District Court of Appeal of Florida, Fifth District.1992)("The tort of conversion constitutes the exercise of wrongful dominion or control of the property to the detriment of the rights of its actual owner. The essence of the tort cause of action of conversion is the disseisin of the owner

or interference with legal rights incident to ownership, such as the right to possession . . . ." (footnote omitted)); *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261, 356 S.E.2d 877, 880 (1987)("[I]n order to be chargeable with conversion, technically it is not necessary that the defendant assert any right of ownership over the property; it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right.").

Plaintiff asserts, repeatedly, that Defendant PHS "controlled" the receivables. Specifically, it contends that Loretta Williams, an employee of Defendant PHS, made recommendations to Hagan, who had the final authority to direct that the receivables be held by ANC or SNC, or paid. The Court finds particularly frustrating that neither party attempted to clarify in what capacity Hagan was acting when he authorized the use of receivables to recoup expenses paid by ANC and SNC on behalf of Southern and Cambridge. "A corporation is a legal entity, an artificial person, and can only act through agents." *Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So.2d 360, 363 (Ala. 1995)(citing *Warwick Development Co. v. GV Corp.*, 469 So.2d 1270, 1276 (Ala.1985); *Home Indemnity Co. v. Anders*, 459 So.2d 836, 840 (Ala.1984) ("A corporation can act only through its servants, agents, or employees.")). So, was Hagan acting for PHS or acting for ANC and SNC?

If Hagan made decisions regarding the retention and disbursement of the receivables while acting as president of Defendant PHS, his actions may constitute an exercise of some form of "dominion" over said receivables by Defendant PHS.

However, such actions will not constitute an exercise of dominion by Defendant PHS if Hagan acted as owner/member of ANC and SNC. If Hagan was acting in his capacity as the owner/member of ANC and SNC, the only action attributable to Defendant PHS with regard to the receivables would be the reconciliation prepared by Williams, which – as a matter of law – would not constitute an exercise of dominion over the receivables by Defendant PHS. The Court notes that, given that the nature of Defendant PHS's role with regard to ANC and SNC was to manage operations – not make decisions regarding the assets of ANC and SNC – it seems unlikely that the decisions of Hagan regarding the receivables were made as the president of the employed management company, Defendant PHS, but rather as the owner/member of the employer companies, ANC and SNC.

Nevertheless the parties submissions do not address this issue. Therefore, the Court finds a disputed issue of fact and that neither party is entitled to judgment as a matter of law. The parties motions for summary judgment as to the conversion claim are due to be denied.

## V.     CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's motion for summary judgment is due to be denied; Defendants' motion for summary judgment is due to be granted in part and denied in part; Defendants' motion to sever is due to be denied; and Defendants' motion to strike is due to be granted.

The Court finds a disputed issue of material fact as to Plaintiff's conversion claim against PHS. As to all remaining claims against the Prime Defendants, the Court finds no existing disputed issue of material fact and that Defendants are entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendants on all claims of Plaintiff, except the conversion claim against Defendant PHS. **The parties are urged to settled said sole remaining claim.**

DONE this 31st day of August, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE